**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/07/24
```

JOHN DELLAPORTAS,

                    Plaintiff,

    - against -

HANA SHAHIN,

                    Defendant.

**24 Civ. 0793 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff John Dellaportas ("Dellaportas") brings six causes of action against defendant Hana Shahin ("Shahin"), stemming from defamatory statements allegedly made by Shahin. (See Amended Complaint ("Am. Compl."), Dkt. No. 13.) Now before the Court is Shahin's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion," Dkt. No. 14.) For the reasons discussed below, Shahin's Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND[1]

This dispute arises from a series of escalating professional and personal exchanges between Dellaportas and Shahin. The Amended Complaint describes how the parties'

---

[1] Except as otherwise noted, the following background derives from the Amended Complaint. The Court takes all facts alleged therein as true and construes all justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II.

1

disagreements over the affairs of the apartment building where both the Dellaportas and Shahin live culminated in an anonymous defamatory email (the "Anonymous Email," Ex. A to Decl. of Matthew I. Schiffhauer),[2] sent by Shahin to many of Dellaportas's neighbors and colleagues.

Dellaportas is an attorney who has resided in the Liberty House Condominium (the "Building") since 1994 and has been active in Building management, including a period on the Board of Managers (the "Board"). Dellaportas served on the Board for sixteen years and served as President of the Board for six of those years. Shahin grew up in France and the Netherlands. She moved into the Building at some point between 2014 and 2015 and met Dellaportas around 2018. (See Am. Compl. ¶ 9.)

Dellaportas and Shahin were, at first, friendly. (See Am. Compl. ¶ 10.) In 2018, Shahin approached Dellaportas to inquire about running for the Board. Dellaportas supported Shahin's candidacy in 2019 and endorsed her to become Board President in 2020, after Dellaportas retired from the position. (See Am. Compl. ¶ 10.)

Shahin also sought Dellaportas's help in seeking the job of Chief Financial Officer with Dellaportas's law firm. After

---

[2] The Court considers the Anonymous Email on this Motion as incorporated by reference in the Amended Complaint. See United States v. Strock, 982 F.3d 51, 63 (2d Cir. 2020).

nearly a year of lobbying for that position, Shahin was interviewed in August of 2021. A few weeks later, Dellaportas informed Shahin that she would not be offered the role. Dellaportas asserts that once Shahin received this news, her "friendliness dissipated almost immediately." (Am. Compl. ¶ 17.)

Dellaportas describes how his relationship with Shahin began to devolve from this point, allegedly leading to the Anonymous Email. Dellaportas alleges that Shahin, acting as Board President, instructed the Building's counsel to make a series of harassing calls to the office manager of Dellaportas's firm. (See Am. Compl. ¶ 18.)

After Dellaportas told others of his falling out with Shahin, Shahin directed the Building's property manager to send a letter to all unit owners accusing Dellaportas of lying to "smear" Shahin and of recruiting Shahin for a job to "bribe or coerce her." (Am. Compl. ¶ 20.)

The Amended Complaint next recounts Shahin's controversial firing of the Building's resident manager, Fernando Castillo ("Castillo"). Castillo had been the Building's handyman for roughly twenty years and received "universally positive reviews." (Am. Compl. ¶ 22.) Castillo was promoted to the position of Resident Manager in 2019.

However, when Shahin became Board President in October of 2020, she made clear she did not want Castillo to remain as Resident Manager. Dellaportas alleges that Shahin viewed Castillo's Puerto Rican heritage as inconsistent with a management-level position. (See Am. Compl. ¶ 24.) Castillo later sued the Building in state court for racial discrimination.

In response to the Board's treatment of Castillo, two recently elected members of the Board immediately resigned. Unit owners also advocated for Castillo. Two residents created an online petition that a majority of the condominium association signed. (See Am. Compl. ¶¶ 28-29.)

On or about January 27, 2022,[3] Dellaportas emailed the Board, urging them to reconsider Castillo's firing. Shahin responded by accusing Dellaportas of attempting to "intimidate" the Board and forbade him from addressing any member of the Board unless communicating through counsel.[4] (Am. Compl. ¶ 27.)

---

[3] The Amended Complaint states that this email was sent on January 27, 2022 (see Am. Compl. ¶ 26), but Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss says the correct date is January 29, 2022. (See Dkt. No. 17, at 4 n.1.)
[4] Shahin was voted out as Board President in 2023, and the Board subsequently voted to bring Castillo back on as Resident Manager with back pay. (See Am. Compl. ¶ 24 n.1.)

On January 29, 2022, the signatories of the online petition received the Anonymous Email from rayvet40@hotmail.com. Over the course of the next two days, forty-two of Dellaportas's coworkers received the same Anonymous Email from the same email address. This Anonymous Email is the subject of this action

The Anonymous Email's author claimed to be "a veteran of the Vietnam War that took place in the 60s." (Anonymous Email at 3.) No unit owner in the Building is a veteran of the Vietnam War. (See Am. Compl. ¶ 37.) The Anonymous Email went on to say that its author has owned a unit in the Building since 1988, but their son currently resides in the unit and has kept them "apprised of the disastrous situation that this building has turned into." (Anonymous Email at 3.)

The Anonymous Email contained a host of accusations. Among other things, the author told unit owners that Dellaportas left his former law firm because he was accused of "sexual harassment and fraud" (id. at 4), that Dellaportas mismanaged the Building's lobby renovation as Board President and may have received kickbacks (see id.), and that the author's son would soon report Dellaportas "to the New State [sic] Bar Association for violating his license to practice law for misrepresentation, fraud, and violating the professional rules of conduct" (id. at 5). Dellaportas

maintains that all of these accusations were untrue. (<u>See</u> Am. Compl. ¶ 35.)

Dellaportas alleges that Shahin is the author of the Anonymous Email and sent it or caused it to be sent. Dellaportas bases this allegation, in part, on the findings of a private investigator who traced the Anonymous Email to the Netherlands, where Shahin "was raised and much of her family still resides." (Am. Compl. ¶ 33.)

Further, the Anonymous Email contained accusations resembling prior accusations levied by Shahin against Dellaportas. Namely, Shahin previously accused Dellaportas of the same misconduct regarding the Building's lobby renovation (<u>see</u> Am. Compl. ¶ 41), and Shahin also told Dellaportas's lawyer similar lies about improper financial dealings (<u>see</u> Am. Compl. ¶ 45; Anonymous Email at 4).

The Anonymous Email also called upon unit owners to "take the lead in a creation of a petition so that a formal accounting of the lobby expenses is brought forth." (Anonymous Email at 4.) Dellaportas claims that after no one responded to this call to action, Shahin asked another unit owner to request that the Board investigate. Shahin then announced that the Board was considering a "forensic audit," but "unit owners voted overwhelmingly against it," as an audit

of the Building's lobby renovation was already complete. (Am. Compl. ¶ 51.)

Others involved with the Building's management became concerned by Shahin's actions. In an email exchange, the executive manager of the Building's property management company, John Janangelo, commented, "I'm becoming increasingly concerned that [Shahin]'s actions are a real problem. Specifically, she is making decisions and allegations not based on fact." (Am. Compl. ¶ 52.) The Building's counsel, Jeffrey Reich, replied, "Agreed, I've had to dial her back on a couple of her ideas and I will continue to try to keep her and the Board from doing anything that will expose them and/or the [Building] to liability." (Am. Compl. ¶ 53.) In the months that followed, Shahin also asked whether she would be "covered" by the Building if she ever faced a defamation suit from Dellaportas. (Am. Compl. ¶ 54.)

As a result of the Anonymous Email, Dellaportas claims he suffered pecuniary harm, including lost income; public disgrace; and emotional distress. (See Am. Compl. ¶ 65.)

Dellaportas brought this suit, alleging six causes of action based on the Anonymous Email: (1) libel ("Count One"), (2) libel *per se* ("Count Two"), (3) intentional infliction of emotional distress ("Count Three" or "IIED"), (4) tortious interference with prospective business relations ("Count

Four" or "tortious interference"), (5) *prima facie* tort ("Count Five"), and (6) injurious falsehood ("Count Six"). Following a pre-motion exchange of letters in accordance with this Court's Individual Rules (see Dkt. Nos. 7, 8, 9), Shahin filed the instant Motion along with a memorandum of law (see Motion; see also Dkt. No. 15). Dellaportas filed an opposing memorandum of law (see Dkt. No. 17), and Shahin thereafter replied (see Dkt. No. 18).

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (quoting Twombly, 550 U.S. at 556); see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In determining whether a complaint states a claim that is plausible, courts must "give no effect to assertions of law or to legal conclusions couched as factual allegations, but [must] accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (cleaned up); see Iqbal, 556 U.S. at 678.

In ruling on a motion to dismiss, the Court may consider the complaint, "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 80 (2d Cir. 2018) (quoting L-7 Designs, Inc. v. Old Navy LLC, 647 F.3d 419, 422 (2d Cir. 2011)).

### III. DISCUSSION

#### A. COUNT ONE: LIBEL

To state a claim for libel under New York law, a plaintiff must establish five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se

9

actionability." Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019) (citing Celle v. Filipino Reporter Enterps. Inc., 209 F.3d 163, 176 (2d Cir. 2000)). A plaintiff must also plead certain aspects of the alleged libel: "(1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." Rsrv. Sols. Inc. v. Vernaglia, 438 F. Supp. 2d 280, 289 (S.D.N.Y. 2006) (collecting cases using the same framework).

Dellaportas's first claim fails because he has not alleged special damages with adequate specificity. As Count One is a claim for libel, and not libel *per se*, special damages are a necessary element of the claim, and "failure to plead special damages is a 'fatal defect.'" Henry v. Fox News Network LLC, 629 F. Supp. 3d 136, 145 (S.D.N.Y. 2022) (quoting Idema v. Wager, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000)); see Palin, 940 F.3d at 809. "New York law requires the identification of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation by defamation; not from the effects of defamation." Henry, 629 F. Supp. 3d at 151 (quoting Kavanagh v. Zwilling, 997 F. Supp. 2d 241, 255 (S.D.N.Y. 2014)). "Special damages 'must be fully and accurately stated, with sufficient particularity to identify actual losses.'" Id.

(quoting <u>Thai v. Cayre Grp. Ltd.</u>, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010)). "Round figures or a general allegation of a dollar amount will not suffice." <u>Id.</u> (alterations omitted) "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." <u>Id.</u>

Dellaportas does allege special damages, just without the requisite specificity. The First Count notes that Dellaportas incurred "special damages in the form of lost income," in an amount "no less than $2,883,004.83." (Am. Compl. ¶ 65; <u>id.</u> ¶ 2.) The Amended Complaint discusses special damages in more detail only in Dellaportas's claim for *prima facie* tort (Count Five), where he writes that he calculated special damages for his present and future lost income to be $2,883,004.83. (<u>See</u> Am. Compl. ¶ 91.) All Dellaportas offers in support of this calculation is that this amount is informed by a net present value calculation "subject to expert review later in the case." (<u>Id.</u>) He does not identify particular clients or business opportunities he may have lost because of the damage to his reputation caused by the Anonymous Email.

Dellaportas's libel claim must be dismissed because the special damages he alleges are speculative and do not make "any attempt at itemization." <u>Barone v. United States</u>, No. 12

11

Civ. 4103, 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016). The allegations in Barone failed to satisfy New York's particularity requirement for special damages because they were round-number estimates, including, among others, legal fees of "at least $415,000.00," lost income "not less than $825,000.00," and a home equity value of "not less than $500,000.00." Id. at *4. Dellaportas's allegations of special damages here - $2,883,004.83 for all past and future harm - present even less specificity than the special damages alleged in Barone. Such "conclusory allegations are clearly insufficient under the special damages pleading requirements." Henry, 629 F. Supp. 3d at 151 (dismissing defamation claim for failure to adequately plead special damages where plaintiff alleged he lost, and would continue to lose, economic opportunities in an amount to be proven at trial); cf. Sprewell v. NYP Holdings, Inc., 772 N.Y.S.2d 188, 196 (N.Y. Sup. Ct. 2003) (holding plaintiff adequately alleged special damages where he sought the precise amount of a fine that had been imposed on him as a result of defendant's defamatory remarks).

Accordingly, Shahin's motion to dismiss Count One is **GRANTED** without prejudice.

B. <u>COUNT TWO: LIBEL *PER SE*</u>

The elements for libel *per se* differ from libel only with respect to damages. See Palin, 940 F.3d at 809. For certain kinds of defamatory remarks, "the law presumes that damages will result, and they need not be alleged or proven." Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011) (quoting Liberman v. Gelstein, 605 N.E.2d 344, 347-48 (N.Y. 1992)). Statements that constitute libel *per se* are "statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to [the plaintiff]."[5] Id. at 645 n.6.

Count Two meets the requirements of libel *per se*. The Amended Complaint details how the Anonymous Email was about Dellaportas; how the Shahin wrote and sent the Anonymous Email (or caused it to be sent); and how Dellaportas's friends, neighbors, clients, and coworkers received the Anonymous Email. The Amended Complaint likewise alleges that the Anonymous Email contained false statements of fact and that Shahin knew of their falsity.

---

[5] At common law, "imputing unchastity to a woman" was actionable libel *per se*, but the law is no longer gender specific. See Rejent v. Liberation Publ'ns, Inc., 611 N.Y.S.2d 866, 868-89 (App. Div. 1st Dep't 1994) (collecting cases).

The Anonymous Email, on its face, falls into at least two of the four categories of libel *per se*, thus excusing Dellaportas from the requirement of pleading special damages for Count Two. The Anonymous Email accuses Dellaportas of serious crimes, such as fraud and bribery. Further, as Dellaportas is a lawyer, these statements, along with the accusation that Dellaportas is a "crooked lawyer," also tend to injure Dellaportas in his trade. Accordingly, the allegations that were insufficiently particularized to plead special damages in Count One are sufficient to plead libel *per se* in Count Two. See Levy v. Nissani, 115 N.Y.S.3d 418, 422 (App. Div. 2d Dep't 2020) (holding statements "imputing 'fraud, dishonesty, misconduct, or unfitness in conducting [one's] profession'" constitute defamation *per se* (quoting Greenberg v. Spitzer, 62 N.Y.S.3d 372, 388 (App. Div. 2d Dep't 2017))); Celle, 209 F.3d at 179 ("[A] writing which *tends* to disparage a person in the way of his office, profession or trade is [libelous] *per se* and does not require proof of special damages." (quotation marks and citation omitted)).

Shahin contests the sufficiency of the Amended Complaint's libel *per se* allegations on two additional grounds: that the unknown author of the Anonymous Email could not plausibly be Shahin, and that the Anonymous Email is

14

subject to a common interest privilege (even assuming Shahin is its author). The Court finds neither argument persuasive.

As the facts are alleged, the Court finds it plausible that Shahin sent the Anonymous Email or caused it to be sent. Prior to the Anonymous Email, the parties were embroiled in a months-long dispute in which Shahin levied similar accusations against Dellaportas. This dispute came to a head when Dellaportas emailed the Board advocating for Castillo, one of the Building's employees. The Anonymous Email was sent to Dellaportas's neighbors and colleagues shortly after Shahin's decision to fire Castillo had been rebuked by a building-wide petition and by Dellaportas's email to the Board. Based on this context, it is a plausible inference that Shahin — as President of the Board and the individual responsible for Castillo's firing — took exception to Dellaportas's disagreement with that decision and acted in retaliation. Moreover, Dellaportas alleges that Shahin inquired with the Building's counsel about "cover[age]" for defamation liability, further supporting the inference that Shahin sent the Anonymous Email or caused it to be sent. (Am. Compl. ¶ 54.) Together, the factual background alleged by Dellaportas – including Dellaportas's relationship with Shahin, Shahin's pattern of behavior toward Dellaportas, and Shahin's personal connection to the location to which the

15

Anonymous Email was traced - sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In Huon v. Denton, the Seventh Circuit dealt with a similar defamation claim. 841 F.3d 733, 742-43 (7th Cir. 2016). Much like Shahin, the Huon defendant sought dismissal of a libel action related to anonymous internet comments, arguing that the plaintiff had not adequately alleged that the defendant authored the anonymous comments. Id. The Seventh Circuit disagreed, holding that allegations of the defendant's pattern of posting similar comments, coupled with the defendant's motive to post such comments, plausibly connected the defendant to the anonymous comments. Id. at 743.

Dellaportas's allegations here are even more specific and plausible than in Huon, given Shahin's well-documented pattern of making defamatory accusations against Dellaportas and apparent motive to retaliate against Dellaportas for opposing Shahin's actions on the Board, among other corroborating factual allegations. Id. at 743. Shahin's version of events may ultimately be proven true, but "[d]iscovery is the proper tool . . . to test the validity" of Dellaportas's allegations, not a motion under Rule 12(b). Huon, 841 F.3d at 742; cf. Arista Records, LLC v. Doe 3, 604

F.3d 110, 122 (2d Cir. 2010) (permitting copyright infringement claim to proceed to discovery against anonymous alleged infringer where plaintiff alleged infringing activity had taken place on a computer at defendant's IP address). Accordingly, Dellaportas's "claim has facial plausibility," as he pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Moreover, no common interest privilege insulates Shahin from this defamation claim. A qualified common interest privilege "extends to a communication made by one person to another upon a subject in which both have an interest." Chandok v. Klessig, 632 F.3d 803, 815 (2d Cir. 2011) (quoting Liberman, 605 N.E.2d at 349). The communication must also be "reasonably calculated to serve" the common interest for the qualified privilege to attach. Buckley v. Litman, 443 N.E.2d 469, 471 (N.Y. 1982). This privilege dissolves where the communication is made to recipients who do not share the common interest, see Penn Grp., LLC v. Slater, No. 07 Civ. 729, 2007 WL 2020099, at *6 (S.D.N.Y. June 13, 2007), or where "malice was the one and only cause for the publication," Liberman, 605 N.E.2d at 350 (quoting Stukuls v. State, 366 N.E.2d 829, 835 (N.Y. 1977)).

Shahin argues that the Anonymous Email was "sent in furtherance of a common interest" shared by unit owners in the Building. (Dkt. No. 15 at 28.) However, any privilege that may have attached to the Anonymous Email dissolved once it was sent to forty-two of Dellaportas's work colleagues who share no such common interest relating to the management of the Building. See Penn Grp., LLC, 2007 WL 2020099, at *6 (noting that whether common interest privilege applies depends on whether the recipients actually share a common interest). Moreover, spreading false allegations of sexual assault and professional misconduct cannot be "reasonably calculated to serve this [common] interest." Buckley, 443 N.E.2d at 471; see also Hillel v. IQVIA, Inc., No. 21-666 Civ., 2022 WL 905852, at *2 (2d Cir. Mar. 29, 2022)). Accordingly, the common interest privilege does not shield Shahin from liability here.

Shahin's motion to dismiss Count Two is therefore **DENIED**.

C. COUNT THREE: IIED

Dellaportas's third cause of action is for IIED. "Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and

(4) severe emotional distress." <u>Restis v. Am. Coal. Against Nuclear Iran, Inc.</u>, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) (citing <u>Bender v. City of New York</u>, 78 F.3d 787, 790 (2d Cir. 1996)). "The bar for pleading this claim is 'extremely high' and the conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" <u>McCollum v. Baldwin</u>, 688 F. Supp. 3d 117, 132 (S.D.N.Y. 2023) (quoting <u>Sesto v. Slaine</u>, 171 F. Supp. 3d. 194, 201-02 (S.D.N.Y. 2016)). "As courts in this Circuit have recognized, defamatory statements generally cannot constitute the extreme and outrageous behavior required for an intentional infliction of emotional distress claim." <u>Restis</u>, 53 F. Supp. 3d at 729 (collecting cases).

In support of his claim for IIED, Dellaportas alleges that Shahin "engaged in conduct toward [Dellaportas] that is extreme and outrageous so as to exceed the bounds of decency in a civilized society by, *inter alia*, subjecting him to defamatory statements and publicly accusing him of criminal and other misconduct." (Am. Compl. ¶ 76.) This allegation is no more than "a formulaic recitation of the elements of a cause of action [for IIED] and will not do." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

"Even if [Shahin's] actions were sufficiently extreme and outrageous, however, [Dellaportas's] claim for intentional infliction of emotional distress fails for another reason — a claim for intentional infliction of emotional distress fails where it falls within the ambit of another tort." Restis, 53 F. Supp. 3d at 729 (citing Fordham v. Islip Union Free Sch. Dist., 662 F. Supp. 2d 261, 276 (E.D.N.Y. 2009)). Dellaportas claims that as a result of Shahin's "extreme and outrageous conduct," i.e., the defamatory statements, Dellaportas "has suffered severe emotional distress." (Am. Compl. ¶ 78.) Accordingly, Dellaportas's IIED claim "falls entirely within the ambit" of the libel claim. Restis, 53 F. Supp. 3d at 730.

Because Dellaportas fails to state a claim for intentional infliction of emotional distress, and because the claim is duplicative of Dellaportas's libel claim, Shahin's motion to dismiss Count Three is **GRANTED** without prejudice.

D. COUNT FOUR: TORTIOUS INTERFERENCE

Under New York law, the elements of a claim for tortious interference with prospective business relations are: "(1) a business relationship with a third party; (2) the defendant's knowledge and intentional interference with that relationship; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4)

20

injury to the business relationship." <u>Grayson v. Ressler &</u>
<u>Ressler</u>, 271 F. Supp. 3d 501, 520 (S.D.N.Y. 2017) (citing
<u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 400 (2d Cir.
2006)).

In support of this claim, Dellaportas alleges that: (1)
he "has a number of successful business relationships with
the recipients" of the Anonymous Email (Am. Compl. ¶ 82); (2)
the Anonymous Email was "intended to interfere, and [has]
interfered, with those relationships" (Am. Compl. ¶ 84); (3)
Shahin "was motivated by ill-will, malice, and a desire to
injure" Dellaportas (Am. Compl. ¶ 85); and (4) the Anonymous
Email interfered with Dellaportas's business relationships
"by harming [Dellaportas]'s reputation and standing among his
partners and by detracting him from productive endeavors,"
(Am. Compl. ¶ 84).

Like his IIED claim, Dellaportas's tortious interference
claim is duplicative of his libel claim. "New York law
considers claims sounding in tort to be defamation claims
. . . where those causes of action seek damages only for
injury to reputation, [or] where the entire injury complained
of by plaintiff flows from the effect on his reputation."
<u>Grayson</u>, 271 F. Supp. 3d at 520 (quoting <u>Chao v. Mount Sinai</u>
<u>Hosp.</u>, 476 F. App'x 892, 895 (2d Cir. 2012)). For his tortious
interference claim, Dellaportas seeks "monetary damages of

not less than $20 million" - the same amount sought for his libel claim. (See Am. Compl. ¶¶ 68, 86.) Moreover, Dellaportas asserts that the injury resulting from this purported tortious interference was that it harmed his "*reputation* and *standing*" and "detract[ed] him from productive business endeavors." (Am. Compl. ¶ 84 (emphasis added).) The alleged reputational harm that Dellaportas suffered as a result of Shahin's alleged defamation cannot support Dellaportas's tortious interference claim. See Grayson, 271 F. Supp. 3d at 520; Chao, 476 F. App'x at 895; Restis, 53 F. Supp. 3d at 726 (dismissing tortious interference claim as duplicative of defamation claim because "the entire injury pleaded . . . flows from the effect of the defamatory comments on Plaintiff['s] reputation").

Thus, for Dellaportas's tortious interference claim to proceed, it must be based on Dellaportas's injury of being "detract[ed] . . . from productive business endeavors." (Am. Compl. ¶ 84). As the Court has already noted in the context of Dellaportas's argument on special damages, the Amended Complaint is silent on which client relationships or business opportunities he lost as a result of the Anonymous Email. "[W]here the underlying business relations remain undisturbed, a claim for tortious interference is fatally defective." RFP LLC v. SCVNGR, Inc., 788 F. Supp. 2d 191, 198

(S.D.N.Y. 2011) (quotation marks omitted) (quoting <u>PPX Enters., Inc. v. Audiofidelity Enters., Inc.</u>, 818 F.2d 266, 270 (2d Cir. 1987)). "Interference that does not rise to the level of a breach of agreement or severance of the relationship does not amount to an injury sufficient to make a tortious interference claim." <u>Id.</u>

Because Dellaportas failed to adequately allege that Shahin's interference caused injury to a business relationship, Shahin's motion to dismiss Count Four is **GRANTED** without prejudice.

E. COUNT FIVE: *PRIMA FACIE* TORT

"To state a claim for *prima facie* tort under New York law, a plaintiff must plead the following elements: '(1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful.'" <u>Grayson</u>, 271 F. Supp. 3d at 525 (quoting <u>Twin Labs., Inc. v. Weider Health & Fitness</u>, 900 F.2d 566, 571 (2d Cir. 1990)). Shahin argues that this cause of action must be dismissed for failure to plead special damages. Based on the Court's analysis of special damages as relating to libel, the Court is persuaded that Count Five, too, must be dismissed.

Additionally, because the alleged harm resulting from the tort is solely a result of the defamatory statements (<u>see</u>

Am. Compl. ¶ 89), even if Dellaportas pleaded special damages with the requisite specificity, this claim must be dismissed as duplicative of the libel cause of action. See Restis, 53 F. Supp. 3d at 730 ("As with the other tort claims, the factual allegations underlying the *prima facie* cause of action relate to the dissemination of allegedly defamatory materials; accordingly this cause of action must fail."); McKenzie v. Dow Jones & Co., Inc., 355 F. App'x 533, 536 (2d Cir. 2009) (affirming dismissal of *prima facie* tort claim where the claim "repeatedly avail[ed] itself of the terminology of defamation"); Chao v. Mount Sinai Hosp., No. 10 Civ. 2869, 2010 WL 5222118, at *14 (S.D.N.Y. Dec. 17, 2010) (dismissing prima facie tort claim because it related "only to defamatory allegations" and therefore "must fail").

Shahin's motion to dismiss Count Five is therefore **GRANTED** without prejudice.

F. COUNT SIX: INJURIOUS FALSEHOOD

"The tort of injurious falsehood 'consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment.'" Grayson, 271 F. Supp. 3d at 518 (quoting Kasada, Inc. v. Access Cap., Inc., No. 01 Civ. 8893, 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14,

2004)). "The elements of an injurious falsehoods claim are: (1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." Id. "The cause of action differs from defamation in that a defamatory statement impugns the basic integrity or creditworthiness of a business while an *injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services.*" Id. (quoting Berwick v. New World Network Int'l, Ltd., No. 06 Civ. 2641, 2007 WL 949767, at *15 (S.D.N.Y. Mar. 28, 2007)).

The statements within the Anonymous Email that refer to Dellaportas as a "crooked lawyer" and imply that he is ethically unfit to practice law implicate the quality of his services. (Am. Compl. ¶ 42); see Grayson, 271 F. Supp. 3d at 518 (finding accusation that plaintiff lawyer was "representing a client while laboring under a conflict that has not been waived" implicated the quality of her services because it would render her "ineffective in her representation"). However, as discussed above, Dellaportas did not adequately plead special damages, a necessary element of this cause of action. See Grayson, 271 F. Supp. 3d at 518 (dismissing cause of action for injurious falsehood because plaintiff's special damages calculation was too speculative) (collecting cases).

Shahin's motion to dismiss Count Six is therefore **GRANTED** without prejudice.

### IV. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant Hana Shahin ("Shahin") to dismiss the Amended Complaint of plaintiff John Dellaportas ("Dellaportas") (Dkt. No. 13) is **GRANTED** without prejudice with respect to the First, Third, Fourth, Fifth, and Sixth Causes of Action; and it is further

**ORDERED** that Shahin's Motion to Dismiss the Amended Complaint is **DENIED** with respect to the Second Cause of Action; and it is further

**ORDERED** that Dellaportas shall have leave to file a Second Amended Complaint within 14 days of the date of this Order; and it is further

**ORDERED** that in the event Dellaportas files a Second Amended Complaint, Shahin shall answer such complaint within 21 days of the date of such filing, otherwise within 21 days of the date of this Order.

The Clerk of Court is respectfully directed to close the Motion entered at Dkt. No. 14.

Dated:    7 August 2024
          New York, New York

Victor Marrero
U.S.D.J.

26