**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

John Dellaportas,

Plaintiff,

v.

Hana Shahin,

Defendant.

**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

Dated: January 27, 2026

The motion to seal is GRANTED. The Clerk of the Court is respectfully directed to close the motion at ECF No. 76.

**THIRD PARTY NORDVPN S.A.'S MOTION TO SEAL**

Pursuant to the Court's Orders dated January 8, 2026 and January 15, 2026 (ECF Nos. 74-75), NordVPN S.A. ("Nord") files this Motion to Seal, and respectfully shows as follows:

1.    The unredacted version of the Declaration that is the subject of this Motion is being contemporaneously filed as **Exhibit A**. Nord previously publicly filed a redacted version of the Declaration on January 6, 2026. *See* ECF No. 73. On January 6, 2026, Nord served a less redacted copy of the Declaration on the parties to this lawsuit by e-mail, designating that less redacted copy as "Confidential" pursuant to the Court's Stipulated Protective Order. A copy of that less redacted Declaration (and related cover e-mail/letter) is being contemporaneously filed as **Exhibit B**.

2.    Nord respectfully requests that the Court allow the Declaration to remain under seal, and to require public disclosure only of what Nord has already publicly filed at ECF No. 73.

3.    Good cause supports sealing the Declaration. Nord is a third party to this

1

lawsuit. Plaintiff served a subpoena on Nord seeking records that Nord does not have—i.e., (i) documents showing identifying information for whomever used certain IP addresses (as a VPN designed to protect its customers' privacy, Nord does not keep logs that would show this information) and (ii) documents showing Nord customers who have a billing address at 377 Rector Place, New York, New York 10280 (Nord could not locate any such documents).

4.      Nord advised Plaintiff of this in its earlier filings. *See* ECF Nos. 57 (Nord letter), 70 (Nord response to subpoena).

5.      Thereafter, on December 17, 2025, the Court held a hearing on Plaintiff's motion to compel. Prior to and during the hearing, Plaintiff claimed that Nord had records responsive to his subpoena because, according to Plaintiff, he himself was a Nord customer who lives at 377 Recor Place, New York, New York. So, according to Plaintiff, Nord should at least have Plaintiff's own customer records showing his physical address.[1] *See* ECF No. 71 (Plaintiff's position). As his "proof," Plaintiff offered a receipt *from Apple* relating to his NordVPN purchase. *Id.* at 3-4. That *Apple* receipt lists Plaintiff's physical address as 377 Recor Place, New York, New York. *Id.* Plaintiff therefore argued that Nord must also have his physical address in Nord's records.

6.      At the hearing, the parties and the Court discussed what information companies such as Nord receive from credit card companies or payment processors, and whether, by virtue of taking payments by credit cards, the companies (i.e., the merchants)

---

[1]    Plaintiff presumably does not care about his own customer records, but is interested in tying the Defendant, who apparently also resided at Plaintiff's address during the relevant time, to the IP addresses at issue (i.e., the IP addresses used to send the e-mails at issue in this case).

obtain the cardholder's ***physical address (i.e., physical street name and number)***.[2] At the hearing, Nord offered to (and the Court directed Nord to) submit a declaration explaining what customer physical address information Nord requests and maintains when a customer pays for Nord's VPN product with a credit card.

7.    On January 6, 2026, Nord filed and served the Declaration (in redacted forms). The Declaration explained, among other things, that:

    a.    Nord does not request or require accounts to be "registered to" any physical address;

    b.    Nord does not request or require physical addresses for someone to become a Nord customer for VPN services or to pay for such services;

    c.    Nord checked its records and found no responsive records associated with the address 377 Rector Place, New York, NY 10280; and

    d.    Credit card companies and Nord's payment providers do <u>not</u> provide customer physical addresses to Nord when processing payments for Nord customers using United States-based payment methods.

*See* ECF No. 73, Declaration (public version) at ¶¶ 4-5, 7.

8.    To show the credit card data that Nord receives and maintains for its customers (and, more importantly for the issue at hand, to show that physical address information is ***not*** received or kept by Nord for credit card transactions), the (non-public) Declaration shows screen shots from Nord's internal customer database. *See* Ex. A (unredacted Declaration) at 4-5; Ex. B (redacted version of Declaration served on parties) at 4-5.

---

[2]    Some companies, as part of the "checkout" process, affirmatively ask customers for their physical address information as, e.g., it is necessary to ship physical products to the customer. Nord, as a VPN service provider, is not one of those companies.

9. Instead of Nord disclosing screen shots associated with a random Nord customer, ***Nord's undersigned counsel*** signed up for Nord in December 2025 using two methods: first, using Nord's website; and second, using counsel's Apple Pay account (to replicate how Plaintiff signed up for Nord's VPN product using Plaintiff's Apple account). *See* ECF No. 73, Declaration (public version) at ¶¶ 10, 12.

10. The Declaration shows screen shots associated with Nord's counsel's two accounts created in December 2025. *See* Ex. A (unredacted Declaration) at 4-5; Ex. B (redacted version of Declaration served on parties) at 4-5. As shown in Nord's records, Nord does not maintain any physical address information associated with Nord's counsel, despite Nord's counsel becoming a Nord customer twice in December 2025 (once through Nord's website and once through Apple Pay). *See* Ex. A at 4-5; Ex. B at 4-5. It is therefore also not surprising that Nord does not maintain Plaintiff's physical address in Nord's records, because he also used his Apple account to become a Nord customer and pay with a credit card. The Declaration confirms that Nord has no physical address information associated with Plaintiff's Nord account. *See* ECF No. 73, Declaration (public version) at ¶ 15.

11. Simply put, while a Nord customer's credit card company or Apple (e.g., via the Apple Pay platform) may maintain the customer's physical address information, that information is not transmitted to Nord when Nord receives the customer's credit card payment. The Declaration is thus meant to satisfy Plaintiff's subpoena—in short, Nord does not have any records responsive to the subpoena, because Nord does not request or keep such records.

12. The Court should allow the unredacted Declaration to remain under seal, because (i) it is not a judicial record potentially subject to the common law's right of access

and (ii) even if it were, good cause exists to allow the Declaration to remain sealed.

13. The common law provides a "right of public access to judicial documents[.]" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Id.* Not all documents filed with a court are judicial documents. Instead:

> [T]he mere filing of a paper or document with the court is *insufficient* to render that paper a judicial document subject to the right of public access. In order to be designated a judicial document, the item filed *must be relevant to the performance of the judicial function and useful in the judicial process*.

*Id.* at 119 (citations and quotations omitted; emphases added).

14. The unredacted version of the Declaration is not relevant to the performance of the judicial function and useful in the judicial process. Instead, a redacted copy of the Declaration was provided to Plaintiff by e-mail service to demonstrate that Nord does not have any documents to produce in response to Plaintiff's subpoena. *See* Ex. B. A more heavily redacted copy of the Declaration was filed publicly to show that Nord had provided the relevant information to Plaintiff regarding whether Nord requests or receives customer physical address information when customers pay by credit card. *See* ECF No. 73. Prior to today, Nord had not filed the unredacted Declaration with the Court or served it on any of the parties, so by definition the unredacted Declaration could not be a judicial document because the unredacted Declaration had not been used for any purpose in this case.

15. Additionally, the Court has not issued any ruling or otherwise relied to date on the unredacted Declaration. Nor has the Plaintiff challenged the Declaration such that a ruling might be expected in the future concerning Nord's compliance with Plaintiff's

subpoena. Without a substantive ruling from the Court concerning (or other judicial use of) the Declaration, the unredacted Declaration is not a judicial record. The Court should grant Nord's request to seal the Declaration on this basis alone.

16.     But even if the Court found that the Declaration is a public record (and it should not), the public would still not have a right to an unredacted copy of the Declaration. Instead, the Court would have to evaluate (i.e., weigh) the common law presumption of access. *Lugosch*, 435 F.3d at 119. A continuum exists from, on the one hand, matters that directly affect an adjudication to matters that, although coming within a court's purview, are irrelevant. *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995); *Lugosch*, 435 F.3d at 119. After determining the weight of the presumption of access, the court "must balance competing considerations against it. Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (citations and quotations omitted).

17.     Here, the unredacted version of the Declaration is irrelevant because it has not directly affected a court adjudication, whether on the merits or otherwise. Further, the publicly filed version of the Declaration contains sufficient information for the Court to render any decision—if Plaintiff ever challenges the Declaration in the future—without relying on the unredacted version of the Declaration.

18.     And, to be sure, the unredacted Declaration discloses confidential and private information concerning both Nord <u>and</u> the undersigned counsel. For example, the unredacted Declaration discloses undersigned counsel's personal e-mail address and a private e-mail address created by Apple to protect counsel's privacy. *See* Ex. A (unredacted

Declaration) at ¶¶ 10-11 (disclosing counsel's private personal Yahoo e-mail address), 12-13 (disclosing counsel's private personal Apple e-mail address). The Declaration further discloses credit card data associated with the undersigned counsel's credit card transactions. *Id.* at ¶¶ 11, 13.

19.     The Declaration also discloses private and confidential information kept by Nord in its business, including internal identifiers. *Id.* at ¶¶ 11, 13. Those identifiers are part of Nord's internal systems and are not merely personal data but are also elements that reflect the internal structure and operational logic of Nord's systems. Disclosure of these identifiers would reveal how Nord's database is organized and operated, giving competitors or malicious actors insight into the company's internal mechanisms, which would increase the risk of exploitation or hacking. Additionally, the disclosed transaction details serve only to demonstrate that the data does not contain physical address information—something that is evident from the field names themselves, making their disclosure unnecessary. Given that these details are at best tangential to the proceedings and only relevant to disproving a claim, sealing this data is warranted to protect the integrity of Nord's internal systems and prevent harm.

20.     The public has no interest in this confidential information and data of Nord and its counsel (including the fields in Nord's internal private database and the information in such fields). Instead, both Nord and the undersigned counsel have a strong interest in keeping the information confidential and private, as the information could theoretically be used for nefarious purposes—e.g., by hackers or criminals to conduct phishing attempts, scams or thefts that target Nord or the undersigned counsel, and his friends, family, and colleagues.

21.     Nord and its counsel also relied on the Stipulated Protective Order to protect their confidential, private, and sensitive information. The Stipulated Protective Order provides that third parties (such as Nord and its counsel) may disclose confidential, non-public proprietary or sensitive or personal information (or any other legally protectable information whose unrestricted disclosure could cause competitive or other injury) during the case by designating it as "Confidential." *See* ECF No. 38, Stipulated Protective Order, ¶ 3. That was done here. *See* Ex. B at 1 (cover letter designating Declaration "Confidential" under Stipulated Protective Order), Declaration at 1 (Declaration marked as "Confidential" under Stipulated Protective Order). Under the Stipulated Protective Order, only a limited class of authorized persons may receive discovery designated as "Confidential" and they are obligated to treat it in a confidential manner, including by not filing it publicly. *See* ECF No. 38, Stipulated Protective Order, ¶¶ 6-7, 10. Nord and its counsel relied on the Stipulated Protective Order when preparing and serving the Declaration.

22.     Nothing required Nord to disclose all of the information it did in the Declaration. Instead, Nord went "above and beyond" the call of duty—including by providing specific database screen shots and disclosure of confidential information of Nord and Nord's counsel—to show Plaintiff that Nord does not maintain the requested records. Had either Nord or its counsel known that the unredacted Declaration might be publicly filed, they would not have included confidential, private, and sensitive information in the Declaration as it was not necessary to address the matter at hand.

23.     Where, as here, the information-at-issue is private, confidential, and sensitive, the Court is justified in allowing the information to remain sealed. *See, e.g.*, *Monterey Bay Military Hous., LLC v. Ambac Assurance Corp.*, 19-CV-9193, 2024 WL 5076424, at *2

(S.D.N.Y. Dec. 11, 2024) (granting sealing request as to "home addresses, phone numbers, and banking information"); *Averbach v. Cairo Amman Bank*, 19-CV-0004, 2023 WL 4144758, at *4 (S.D.N.Y. June 23, 2023) ("to the extent the parties' exhibits contain account numbers, routing numbers, and electronic identifying numbers for accounts that are still open, the parties may redact this information"); *Fairstein v. Netflix, Inc.*, 20-CV-8042, 2023 WL 6164293, at *4 (S.D.N.Y. Sept. 21, 2023) (allowing sealing of certain "proprietary and confidential materials about business operations that, if disclosed, have the potential to harm Netflix's competitive standing").[3]

For these reasons, Nord respectfully requests that the Court grant this motion.

---

[3]    *See also CRC Ins. Services, Inc. v. Suh*, 22-CV-9528, 2025 WL 560749, at *2 (S.D.N.Y. Feb. 19, 2025) (granting motion to seal a joint letter requesting a discovery conference and its attachments that "contain proprietary and confidential information") (quotations omitted); *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 748 F. Supp. 3d 257, 261 (S.D.N.Y. 2024) ("[T]he Court finds that the proposed sealing requests are narrowly tailored to prevent unauthorized dissemination of confidential business information, as well as proprietary technical and trade secret information, the protection of which outweighs the public's right of access.").

Dated: January 23, 2026

Respectfully submitted,

BRETT CHARHON
  bcharhon@ccrglaw.com
STEVEN CALLAHAN⋆
  scallahan@ccrglaw.com
**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392
⋆Admitted pro hac vice

*Counsel for Non-Party NordVPN S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 23, 2026, the foregoing document was filed using the Court's electronic filing system which will serve a copy of the document on all parties and counsel of record by e-mail.

STEVEN CALLAHAN